UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LARRY LEROY HERSEY,<br><br>                    Petitioner,<br><br>v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                    Respondent. | Case No. 1:15-cv-00087-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Pending before the Court is the Petition for Review of Respondent's denial of Social Security Disability Benefits, filed by Larry Leroy Hersey on March 12, 2015. (Dkt. 1.) Pursuant to 28 U.S.C. Section 636(c), the parties have consented to the exercise of jurisdiction over this matter by the undersigned United States Magistrate Judge. (Dkt. 9.) The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record (AR), and for the reasons that follow, will affirm the decision of the Commissioner.

**MEMORANDUM DECISION AND ORDER - 1**

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Social Security Disability Benefits on July 13, 2012, claiming disability beginning on January 31, 2011, due to various physical and mental conditions.[1] His application was denied initially and again on reconsideration, and a hearing was held before Administrative Law Judge (ALJ) John T. Molleur on December 21, 2012. After hearing testimony from Petitioner and a vocational expert, ALJ Molleur issued a decision finding Petitioner not disabled on October 17, 2013. On January 9, 2015, the Appeals Council denied Petitioner's request for review, making the ALJ's decision the final agency decision. Petitioner appealed this final decision to the Court on March 13, 2015. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

Petitioner was born on December 7, 1967. He graduated from high school and served in the military from 1987 through 2011. Petitioner's past relevant work includes work as an airplane mechanic.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner has not engaged in substantial gainful activity since his alleged onset

---

[1] These include obstructive sleep apnea, migraine headaches, panic disorder with agoraphobia, depression, pseudogout-bilateral wrists, degenerative disc disease, right tarsal tunnel syndrome, tinnitus, plantar fasciitis-right foot, sinusitis, hypertension, left testicular impairment, hemorrhoidectomy with residuals, ankylosing spondylitis, bilateral hearing loss, otitis externa, irritable bowel syndrome, erectile dysfunction, lower extremity paresthesia, ADD, and osteoarthritis. (AR. 199.)

**MEMORANDUM DECISION AND ORDER - 2**

date of January 31, 2011. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's right hip degenerative joint disease, ankylosing spondylosis, degenerative disease of the cervical and lumbar spine, sleep apnea, migraines, and degenerative joint disease of the hands severe within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found Petitioner's impairments did not meet or equal the criteria for the listed impairments, specifically considering Listing 1.02 (major dysfunction of a joint), Listing 1.04 (disorders of the spine), and Listing 3.10 (sleep related breathing disorders). If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity (RFC) and determine, at step four, whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ found Petitioner was not able to perform past relevant work as an airplane mechanic. If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate, at step five, that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience.

Here, the ALJ found Petitioner retained the RFC to perform sedentary work, but with no climbing of ropes, ladders or scaffolds; he can perform other postural activities occasionally; he must limit overhead reaching with both upper extremities to occasional; he must have no direct exposure to vibrations and no concentrated exposure to extremes

**MEMORANDUM DECISION AND ORDER - 3**

of cold, dusts, fumes, gases, poor ventilation, and noxious odors; he cannot work on unprotected heights; he can engage in frequent reaching in all other directions with both upper extremities; he can occasionally forcefully grip and twist with both hands; and he can only frequently handle/finger with both hands. With this RFC, the ALJ determined Petitioner could perform the functions of representative occupations such as room service order clerk, document preparer, and call out operator.

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are appropriate because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if her physical or mental impairments are of such severity that she not only cannot do her previous work but is unable, considering her age, education, and work experience, to engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if the decision is supported by substantial evidence and is not the product of legal error. 42 U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474 (1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant

**MEMORANDUM DECISION AND ORDER - 4**

evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by substantial evidence, even though other evidence may exist that supports the petitioner's claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if there is substantial evidence to support the decision of the Commissioner, the decision must be upheld even when the evidence can reasonably support either affirming or reversing the Commissioner's decision, because the Court "may not substitute [its] judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir. 1999).

When reviewing a case under the substantial evidence standard, the Court may question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's credibility assessment is entitled to great weight, and the ALJ may disregard a claimant's self-serving statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ makes a careful consideration of subjective complaints but provides adequate reasons for rejecting them, the ALJ's well-settled role as the judge of credibility will be

**MEMORANDUM DECISION AND ORDER - 5**

upheld as based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner contends the ALJ erred at step four because the ALJ failed to: 1) articulate specific and legitimate reasons for attributing little weight to the opinion of Petitioner's treating physician, Monte Moore, and 2) support his credibility evaluation of Petitioner with substantial evidence in the record. The Court addresses each argument below.

**I. The ALJ provided specific and legitimate reasons for attributing little weight to the opinion of Dr. Moore**

Petitioner asserts the ALJ erred because he failed to articulate specific and legitimate reasons for attributing little weight to the opinion of one of Petitioner's treating physicians, Monte Moore: specifically, Dr. Moore's opinion in a Medical Source Statement ("RFC Assessment"), where he indicated that Petitioner is "significantly limited" and "would not realistically be able to maintain full time employment." In his decision, the ALJ rejected this opinion by Dr. Moore because it was "inconsistent with the medical evidence in the record," as well as inconsistent with Dr. Moore's own progress notes documented shortly after he completed the RFC Assessment for Petitioner. (AR 26.) As explained below, the Court finds the ALJ's weight determination regarding Dr. Moore's opinion is supported by specific and legitimate reasons.

The United States Court of Appeals for the Ninth Circuit distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating

**MEMORANDUM DECISION AND ORDER - 6**

physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chatter,* 81 F.3d 821, 830 (9th Cir.1995). Generally, more weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen,* 853 F.2d 643, 647 (9th Cir.1987). If the treating physician's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan,* 923 F.2d 1391, 1396 (9th Cir.1991). If the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject the treating physician's opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler,* 722 F.2d 499, 502 (9th Cir.1983).

"The ALJ is responsible for resolving conflicts in medical testimony, and resolving ambiguity." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999) (internal citation omitted). "Determining whether inconsistencies are material (or in fact inconsistencies at all) ... falls within this responsibility." *Id.* "An ALJ can meet the requisite specific and legitimate standard for rejecting a treating physician's opinion deemed inconsistent with or unsupported by the medical evidence 'by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Smith v. Astrue*, 2011 WL 3962107, at *5 (C.D. Cal. Sept. 8, 2011) (citing *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).

In his decision, the ALJ set forth a detailed summary of Petitioner's medical records, including the records of Dr. Moore, who treated Petitioner for his pain management on a long-term basis. (AR. 18-25.) Following the ALJ's thorough summary

**MEMORANDUM DECISION AND ORDER - 7**

of Petitioner's lengthy medical record (which totaled nearly seven pages of the ALJ's decision), he set forth the opinion evidence standard, and weighed the opinions of each physician and other acceptable medical sources who offered opinions regarding Petitioner's physical limitations. (AR. 25-27.) In his analysis of Dr. Moore's opinion, the ALJ specifically referenced the RFC Assessment completed by Dr. Moore at the Petitioner's request, dated March 19, 2013. (AR. 1996.) Dr. Moore indicated in the assessment that Petitioner had been diagnosed with ankylosing spondylitis and degenerative disc disease and that his prognosis was chronic. He opined that Petitioner's impairments were reasonably consistent with his symptoms. (AR. 1999.) Dr. Moore was unable to opine to the number of hours or minutes how long Petitioner could sit or stand, because a definitive opinion would have required functional capacity testing, which he did not conduct. (AR. 1997.)

However, Dr. Moore noted also in his RFC Assessment that Petitioner "is significantly limited." *Id.* He indicated Petitioner could not walk more than 1 to 2 blocks without rest or severe pain and indicated that Petitioner required the use of a cane or other hand-held assistive device. (AR. 1997-1998.) Dr. Moore opined that Petitioner could on occasion twist, stoop, crouch/squat, climb stairs, and climb ladders. He indicated that Petitioner needed a job that permitted Petitioner to shift position at will from sitting, standing or walking. *Id.* Dr. Moore ultimately concluded that Petitioner "is significantly limited and he has moderately severe pain requiring opiate medication. He would not realistically be able to acquire or maintain full time employment with his job skills." (AR. 1999.)

**MEMORANDUM DECISION AND ORDER - 8**

The ALJ attributed only little weight to the opinion made by Dr. Moore in his RFC Assessment, because Dr. Moore's opinion was "inconsistent with the medical evidence in the record." In support of this conclusion, the ALJ referenced Dr. Moore's progress note from Petitioner's follow up appointment on April 9, 2013—less than one month after completing the RFC Assessment for Petitioner. In the progress note, Dr. Moore indicated that Petitioner "is able to take care of basic self-care needs, drive a car, go[sic], and he does light work on his place." (AR. 27, 2106.)

Petitioner argues the ALJ's reasons for rejecting the opinion made by Dr. Moore in his RFC Assessment are in error because the ALJ "failed to specify the medical evidence that he deems inconsistent." (Dkt. 15 at 5.) However, Petitioner's argument selectively pinpoints the sole paragraph where the ALJ stated the weight given to Dr. Moore's RFC Assessment, without consideration of the context surrounding the paragraph and the entirety of the ALJ's RFC determination.[2] When the ALJ's decision is read in its entirety, it is clear to the Court that the opinion made by Dr. Moore in his RFC Assessment—that Petitioner is significantly limited and unable to work—is inconsistent with the opinions of the other treating and examining physicians and the medical record as a whole. *Magallanes v. Brown*, 881 F.2d 747, 755 (1989) ("[a]s a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion."); *see Zlotnikov v. Apfel*, 2000 WL 635449, at *3 (N.D. Cal. May 11, 2000), *aff'd sub nom. Zlotnikov v. Barnhart*, 28 F. App'x 699 (9th Cir. 2002) ("...*Magallanes* stand[s] for the rule that substantial evidence must always back up an

---

[2] Petitioner does not argue that the ALJ discredited any other statements or opinions made by Dr. Moore.

**MEMORANDUM DECISION AND ORDER - 9**

ALJ's rejection of a treating doctor's opinion, but where that evidence consisted of other doctors' opinions that rested on independent, objective findings, there was no need for the ALJ to set out specific reasons for favoring them.")

For instance, the ALJ noted that he considered the March 8, 2011 medical findings from Petitioner's treating physician, Daryl MacCarter, a board certified rheumatologist. (AR. 349.) Petitioner presented to Dr. MacCarter for a follow up appointment regarding his ankylosing spondylitis. During that appointment, Petitioner reported at least a 50% improvement while taking Humira as prescribed as part of his treatment of Petitioner's ankylosing spondylitis. *Id.* Although Petitioner reported pain and decreased range of motion in his cervical spine, Dr. MacCarter indicated in his report that Petitioner's symptoms from his lumbar nerve entrapment were mild and intermittent.

The ALJ noted also that, on September 8, 2011, Petitioner had a Compensation and Pension Examination completed at the Boise Veterans Medical Center by an examining medical professional. (AR. 433.) When asked by the examining physician about his ankylosing spondylitis, Petitioner reported his response to treatment had been fair. (AR. 1934.) During the examination, Petitioner had 4 x-rays completed on his cervical spine and the results showed all vertebral bodies maintained their normal height and alignment. (AR.1940.) There was mild space narrowing at C4/C5, but no fractures were identified. *Id.* Petitioner also had 4 x-rays completed on his lumbar spine. (AR. 1941.) The results indicated mild lower lumbar segment facet arthritis and a slight decrease in disc height at L5/S1 with more moderate loss of height at L3/L4. *Id.* The

**MEMORANDUM DECISION AND ORDER - 10**

doctor noted that Petitioner's symptomatology both perceived by him and mentioned in Petitioner's file were out of proportion with radiographic findings. (AR. 1942.)

On July 13, 2012, Petitioner had an appointment with Robert Pollmann, P.A.,[3] another treating medical professional in Dr. Moore's office, for a follow up for his pain management. (AR. 383.) Petitioner represented that his back, neck, and hip pain were the same and that his hands and feet were worse than during his previous appointment. He stated his pain was about a 6, on a scale from 1 to 10, with 10 being most painful. During the appointment, Petitioner reported that he was enjoying summer activities with his children and that he was looking forward to the county fair.

On September 18, 2012, Petitioner had a Compensation and Pension Examination for a mental disorder at the Boise Veteran's Medical Center, completed by an examining physician. (AR. 478.) Petitioner reported that he continued to manage daily tasks at his home/farm and that he was able to leave his home at least twice a week. (AR. 481.) The doctor noted that Petitioner brought a cane with him to his appointment and Petitioner stated he had been using it for about a year and a half. (AR. 489.) The doctor noted, however, that Petitioner was not using a cane the last time he saw him. The doctor noted also that Petitioner's use of a cane implies that his right arm and wrist were capable of supporting him.

---

[3] P.A. Pollmann works with Dr. Moore at Idaho Physical Medicine & Rehabilitation. The record indicates Petitioner began seeing Dr. Moore for pain management beginning before the onset date on January 25, 2010. (AR. 422.) Petitioner saw Dr. Moore every two to three months, but on occasion, was seen by P.A. Pollmann.

**MEMORANDUM DECISION AND ORDER - 11**

Dr. Moore ordered an MRI on Petitioner's cervical spine in January of 2013. (AR. 2007.) The results were compared to an MRI from 2009 and indicated a stable alignment of Petitioner's cervical spine. There was mild progression of degenerative disc changes at C4/C5 without significant central spinal canal stenosis in the left greater than the right, mild to moderate neural foraminal narrowing secondary to disc and uncovertebral spurring. The same month, Petitioner also had an MRI completed on his right hip. (AR. 2009.) The results were compared with x-rays from November of 2012, and indicated no labral tear and no cartilage defect in Petitioner's right hip.

Petitioner had a follow up exam with Svetlana Meir, M.D., another board certified rheumatologist, and treating physician on February 4, 2013, who reported that Petitioner's ankylosing spondylitis was under control. (AR. 2002.) Four days later, Petitioner had an MRI completed on his lumbar spine. (AR. 2005.) The results indicated unchanged mild spondylitis at L3/L4 and L5/S1, without central canal stenosis, and unchanged mild disc desiccation and small central/left paracentral disc protrusion at L5/S1 with no central canal or neural foraminal stenosis. Petitioner also had an MRI completed on his pelvis and the results showed tiny foci or subchondral marrow edema along the right sacroiliac joint, which is likely related to minimal degenerative disc changes. (AR. 2006.) There were no fractures and the lumbosacral plexus was normal in appearance.

The ALJ considered the notes from Petitioner's appointment with Dr. Moore on March 6, 2013—just shy of two weeks before Dr. Moore Completed the RFC Assessment for Petitioner. (AR. 2020.) It was noted by Dr. Moore that, the purpose of the

**MEMORANDUM DECISION AND ORDER - 12**

appointment was to follow up on a recent procedure on Petitioner's left C5/C6 and C6/C7 fluoroscopically guided stereotactic radiofrequency facet joint denervation. Petitioner reported to Dr. Moore that he "felt very good" and recorded Petitioner saying: "I was very impressed. No more spasms just like turning off a switch. It was very cool." *Id.* Three months later, Petitioner visited the 366th Medical Group at Mountain Home Airforce Base because he claimed his pain medication was no longer working. (AR. 2053.)

The ALJ's comprehensive review of Petitioner's medical record, including the findings of the other treating and examining physicians constituted specific and legitimate reasons for rejecting the opinion provided by Dr. Moore in his RFC Assessment. The ALJ did not err.

## II. The ALJ's evaluation of Petitioner's credibility was not in error

Petitioner asserts also the ALJ erred by failing to properly evaluate Petitioner's credibility, because the ALJ's evaluation of Petitioner's daily activities and reliability was not supported by substantial evidence in the record. The ALJ found Petitioner not fully credible, because Petitioner's described daily activities were "not that limited to the extent one would expect, given the complaints of disabling symptoms and limitations."(AR 19.) In addition, the ALJ found Petitioner may not be entirely reliable due to evidence of the Petitioner's failure to take his medication as prescribed. *Id.* For the following reasons, the Court finds the ALJ's credibility assessment is supported by substantial evidence in the record.

**MEMORANDUM DECISION AND ORDER - 13**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater,* 157 F.3d 715, 722 (9th Cir.1998). When evaluating credibility, the ALJ may utilize ordinary techniques of credibility evaluation, including considering the claimant's reputation for truthfulness, inconsistencies in the claimant's testimony or between the claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart,* 278 F.3d 947, 958–59 (9th Cir.2002). The ALJ may consider also the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96–7p. However, the ALJ's credibility findings must be supported by "specific, cogent reasons." *Reddick,* 157 F.3d at 722.

Where, as here, there is no affirmative evidence of malingering, the ALJ may find a claimant's subjective complaints not credible only if the ALJ provides "clear and convincing" reasons. *Burch,* 400 F.3d at 680. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick,* 157 F.3d at 722. But, if there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not second-guess the ALJ. *Thomas,* 278 F.3d at 959.

Here, objective medical evidence demonstrates Petitioner suffers from right hip degenerative joint disease, ankylosing spondylosis, degenerative disease of the cervical

**MEMORANDUM DECISION AND ORDER - 14**

and lumbar spine, sleep apnea, migraines, and degenerative joint disease of the hands. Petitioner testified he could not maintain regular employment because his impairments limit his ability to lift, squat, walk, sit, kneel, climb stairs, reach, stand, and use his hands. He further stated squatting, standing, bending, reaching, and sitting were all painful. (AR. 19.)

The ALJ could properly find that Petitioner's description of the severity and effect of his disabilities was inconsistent with Petitioner's self-reported daily activities. Daily activities may be grounds for an adverse credibility finding if they contradict a claimant's other testimony. *Orn v. Astrue,* 495 F.3d 625, 639 (9th Cir.2007).

Petitioner reported a variety of day-to-day activities that undermined his claims of disabling pain. In a November 19, 2012 Function Report, Petitioner stated on a typical day he gets his children off to school, feeds and takes his dog on a walk, picks his children up from the bus stop, helps prepare dinner, and helps his children with their homework and chores. He indicated he takes breaks to rest in between these activities. (AR 232.) In the same report, Petitioner noted he could prepare his own meals on a weekly basis and do the laundry and wash the dishes. *Id.* Earlier the same year, Petitioner reported to P.A. Pollmann that he was enjoying summer activities with his children and looking forward to the county fair (AR. 22, 383), and he reported to the VA that he continued to manage daily tasks at his home/farm (AR. 22). Contrary to Petitioner's allegations of disability, Petitioner indicated also to the VA that "he applied for work and thought he was capable of functioning well in a job, but believed employers had not chosen to hire him due to his physical impairments." (AR. 488.) Considering these

**MEMORANDUM DECISION AND ORDER - 15**

activities and statements made by Petitioner, the ALJ concluded Petitioner's symptoms were not as severe as Petitioner claimed.

The Petitioner argues the ALJ misrepresented the content of the Function Report, because Petitioner described in the same report instances of lying down and/or resting in between the activities listed. While it is accurate Petitioner's testimony of daily activities is somewhat equivocal about the extent to which he is able to keep up with all of these activities without resting in between them, the ALJ's interpretation of the evidence is a reasonable interpretation supported by substantial evidence. It is not the Court's role to second guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

In addition, the ALJ noted that Petitioner did not follow the prescribed medicine regime. The Ninth Circuit has consistently held that, "in assessing a claimant's credibility, the ALJ may properly rely on 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'" *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)). According to agency regulations, "the individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96–7p.

Here, the ALJ cited to Petitioner's lab work from October of 2012, completed by Idaho Physical Medicine and Rehabilitation. (AR 2026-2027.) At the time of the lab test, Petitioner had been prescribed oxycodone and morphine. *Id.* The ALJ noted that the results showed that Petitioner tested positive of Hydromorphone and Oxymorphone,

**MEMORANDUM DECISION AND ORDER - 16**

which were inconsistent with the Petitioner's prescribed medications. The ALJ found that this evidence "may not be the result of a conscious intention to mislead; however, the inconsistencies suggest that the [Petitioner] generally may not be entirely reliable." (AR 19.)

Upon the Court's review of the lab report, it is not entirely clear whether the lab results in question were conclusive regarding Petitioner's use of the prescribed medications.[4] However, this instance is the only evidence in the record noted by the ALJ where Petitioner arguably was not compliant with a prescribed course of treatment. Here, this instance of non-compliance does not amount to substantial evidence required to find the Petitioner unreliable. Accordingly, the Court finds the ALJ erred in concluding that Petitioner was not "entirely reliable." This error, however, was harmless, as the ALJ otherwise provided clear and convincing reasons, supported by substantial evidence based on Petitioner's daily activities (as indicated above), to support his finding that Petitioner was not entirely credible. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)("So long as there remains 'substantial evidence supporting the ALJ's conclusions on ... credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed harmless and does not warrant reversal.") (citing *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1195–97 (9th

---

[4] Petitioner tested positive for Hydromorphone. (AR. 2026.) The lab results indicate that Hydromorphone may be present as a metabolic of hydrocodone and in lose concentrations as a metabolite of morphine. *Id.* Petitioner tested negative for Oxymorphone.

**MEMORANDUM DECISION AND ORDER - 17**

Cir.2004) (applying harmless error standard where one of the ALJ's several reasons supporting an adverse credibility finding was held invalid).

## CONCLUSION

The Court will affirm the ALJ's decision that Petitioner is not disabled. The ALJ provided specific and legitimate reasons supported by substantial evidence in the record for attributing only little weight to the RFC Assessment opinion of Petitioner's treating physician, Dr. Moore. Additionally, the ALJ provided clear and convincing reasons supported by substantial evidence in the record to for his finding that Petitioner was not fully credible regarding the limitations from his impairments that affected his ability to engage in work.

## ORDER

Based upon the foregoing, the Court being otherwise fully advised in the premises, **it is hereby ORDERED that** the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED** and that the petition for review is **DISMISSED.**

Dated: **September 29, 2016**

Honorable Candy W. Dale
United States Magistrate Judge